much time as you want. If you are the appellant for rebuttal, you don't have to ask for permission, but just keep an eye on the clock because that is your total time for the argument, and when you're out of time, the argument is over. So with that, you may also assume that we have read your briefs and that we are well familiar with the facts and the procedural history of the case. So get right at the legal issues that you'd like to argue. We'll call, let's see, Hanes v. Galazza is submitted on the briefs. We'll call Haines v. Galazza. Wright v. Lewis. Good morning. Carolyn Wiggin from the Federal Defender's Office in Sacramento. I would like to reserve two minutes for rebuttal. Your Honors, I'd like to start by talking about a case that just was decided Monday by the Supreme Court. I did distribute copies of the case and filled out the gum sheets before argument and served a copy on Ms. Bush as well. The case is United States v. Benitez, and it arises in a different context than the case before Your Honors today. It's undirect appeal. It has to do with Rule 11, and it largely concerns the question of what constitutes a plain error. But I did think it was relevant because towards the end of the majority opinion, in fact, I think it was a 9-0 majority, there's a discussion of what the court should look to in deciding whether misinformation a defendant may have received before he entered a plea. And I'm looking at the Westlaw printout. It's page 8 of the decision. It's numbered as page 9 of 10 in the printout I provided the Court. And at the bottom of the first column, the Court states that the Court should look at things like the misinformation of the defendant's intent to go to trial. And I'm quoting here, the point of the question is not to second-guess the defendant's actual decision. If it is reasonably probable that he would have gone to trial absent the error, it is no matter that the choice may have been foolish. The point, rather, is to inquire whether the admitted warning would have made the difference required by the standard of reasonable probability. And I think that's relevant in this case because the — both the State court of appeals and the State in this case have talked about the number of charges Mr. Wright was facing, his exposure, if he was tried on everything and lost on everything, and used that as evidence that this really didn't make a difference to him knowing about the additional parole term. But I think the evidence is clear that whether or not we think it was wise or foolish, immediately after entering the plea and receiving his sentence in which it was not mentioned that he'd get parole, within days he came back into court and tried to get out of that plea. He knew that the State still had all of its evidence then, could have proceeded to trial, so he sincerely wanted to get out of this plea. Ms. Wiggins, perhaps you could help me. I am wondering how you can distinguish Hill v. Lockhart, which squarely holds that it's not required that we tell the defendant the parole consequences of the plea, and why was it unreasonable under controlling Supreme Court authority for the California appellate courts to conclude that there was no obligation on the part of the superior court judge when taking the plea to advise of the mandatory parole term? I think that goes to the distinction between parole, as it's traditionally used in many jurisdictions, and California's parole system. And California's parole system is much like Federal supervised release. It automatically follows a criminal sentence of a certain length. At the end of that sentence, whether the person has earned all of his good time credit, none of his good time credit, he's going to get this State parole at the end, which is a form of custody by the CDC, involves restrictions, involves the exposure to being violated and doing additional time. But it's still within the same sentence, isn't it? Well Unlike Federal supervised release, which is actually a period of time that can be tacked on for a period of up to two or three years, depending on the severity, here the parolee is released from confinement prior to the completion or expiration of the full term of his sentence. Isn't that correct? Actually, I don't think that's correct, Your Honor. Under California law, unlike the traditional parole systems where one would get part of their time in the prison excused while they were out on parole, in the California system, one does their whole prison sentence. So in this case, the judge tells You're telling me that there's no provision for eligibility for release prior to the This was a 37-year term. 37-year term. You're telling me he's got to serve the full 37 years before he's eligible for parole? I'm not saying that he can't earn good time credit and get out early. I believe he's doing two-thirds time. All right. And So he still hasn't served his complete sentence if he's released at the end of two-thirds of his sentence on mandatory parole, right? Well, Your Honor, he might earn good time credits. He might not earn good time credits. He might do the entire 37 years.  Depending on his behavior. And he will still have parole following that, no matter. Even whereas in the traditional system, if he'd have a parole eligibility date, he could get time within the confines of the institution excused while he was sort of furloughed. But in any event, he wouldn't do more than his prison time. The prison time promised to him when he entered his plea. In California, Mr. Wright was promised 37 years maximum. He could do those full 37 years with, let's say he doesn't earn any good time credit. He does the full 37 years. He still is going to be on parole after that. So in that sense, I think it is more like federal supervised release. And it can result in a sentence where, I mean, he has no guarantee he's going to get good time credits. So he could do the 37 years. And at the end, whatever day that is, he's going to go on to state parole. So in that sense, I think it's a direct consequence of this guilty plea. It's not influenced by his behavior in prison. And although I can see what you're saying is that the good time credit might make up for it, but he may or may not earn that credit. Do you have any statistics on how many people actually serve the full sentence? Do I have statistics? Because we see a lot of habeas cases, and I can't remember ever seeing one where the parolee served the full term. It seems that they're always released shy of it for whatever reason. I mean, good time credits can be taken away. They can be restored. It's not like you lose them forever. Right. Your Honor, I don't have statistics on that. But I would say that someone in Mr. Wright's shoes could say, okay, I'm agreeing to a 37-year sentence. I know that under this sentence – and, again, I'm not positive on this, but I think he's doing two-thirds time. I know I'm actually going to do 28 years or whatever that is. So that's the – what he thinks the bargain is in his mind, assuming he believes he's going to earn good time credit. I don't know if he believes that or not, but let's assume he is counting on that. Then – so that's the bargain he has in mind when he enters this plea. A few days later, after he's been sentenced, he somehow learns, no, it doesn't matter if you earn all or none of your good time credit, you're going to be on parole afterwards. So I hope that answers the question, and I'd like to reserve my remaining minute and a half. Very well. Thank you. Thank you. Good morning, Your Honor. Janine Bush for Respondent of the people of the State of California. Mr. Wright was sentenced under the three-strikes law. He originally had three strikes alleged and proven, and at sentencing, the trial court struck two of them. So he was sentenced as a third-strike offender with one prior strike. Consequently, he's under the 80 percent provision, and he does earn good conduct and work credits at that – at that rate. So does that mean, then, he's not eligible for parole until he serves 80 percent of his sentence, assuming that he earns the maximum good time credit? Your Honor, I think that's correct. In this particular case, the court is aware that there's a distinction between two issues. One of them is a Boykentall issue where advisements are constitutionally required, and another is the issue whereby advisements are required by a State rule of criminal procedure. And in this particular case, parole consequences are normally given at a sentencing hearing as a rule – as something under the rule of the State, as something that a defendant should be told about. In this particular case, this defendant has had multiple criminal convictions. And even if the court were to say, okay, this is a Boykentall issue, and he would have had to have had a warning unless the record showed that he was otherwise aware. And this particular record does show that he was otherwise aware, Your Honor, even under a Boykentall. Because of the fact that he'd been through the system before? Yes, Your Honor. The 969 packet shows a plea colloquy with the sentencing judge immediately proceeding conviction of his. There's another written plea form that also shows this. And this is not a person who is unsophisticated in the criminal system. Was he subjected to a mandatory parole term before? Pardon me, Your Honor? Was he subjected to a mandatory parole term in his prior experiences? Yes. Yes. You know, a determinate sentence basically always has a parole term attached to it, according to Penal Code Section 3000. And it's a point made in a couple of the California cases, including Moser, In re Moser, that a parole term isn't something that's even negotiable. You can't as a part of a plea bargain say, well, okay, I'm only going to do 37 years, but I'm no parole. It's just not something that can be negotiated away. Of course, that makes it sound more and more like a direct consequence of his plea. Your Honor, it is an indirect consequence in that it is largely under the control of the defendant's behavior and the court presented. No, you just said it doesn't matter what he does. He's going to have a mandatory parole term. To serve a parole term happens always with a determinate sentence. However, the total of the sentence and the parole term could end up being less than the actual stated sentence. Depending on his conduct. Yes. Yes. If the Court wishes. What do we do with the fact? How do we explain his quick attempt to get back out of this plea? I mean. He's sitting there saying, oh, the judge didn't tell me about parole. Maybe I can get out of this. I think that's how we explain it. Because this man. I mean, get out of it. If he succeeds in getting out, it will be a Pyrrhic victory indeed. Yes, Your Honor. Yes. He did get a good sentence given the charges that he was facing. The Court will probably notice that in the notice of lodging, the transcripts of this case numbered about 15 in number. They're all little transcripts. And I'd like to direct the Court to the supplemental clerk's transcript. The larger of the two. And that's the transcript that has the 969B packet and the references that I mentioned earlier. Do you have a page site for it? Yes, Your Honor. CT-29 and CT-179. And the CT-29 reference is the 85 plea conviction form. And the CT-179 reference is the plea colloquy in the 87 conviction. Unless the Court has further questions, I think I'm finished with what I needed to say. What is the test we apply? Is it one of subjectively would he have made a different decision on the plea, or do we look at it from an objective standpoint? Your Honor, I think we look at it from an objective standard, because that's the standard employed in Benitez, as a matter of fact. And there's a case I cited in my Respondents' Brief, U.S. v. Shearer, that is out of a district court in Colorado. And that's made clear in the district judge's analysis. And he said, I have in front of me basically an affidavit by the defendant saying I would not have pled guilty if I had known. And the district court said, well, I don't have to credit that, particularly in light of the objective evidence facing the defendant at the time he pled guilty, namely the charges, the strength of the case, the sentence in that sentence term, and that sort of thing. So we take into account the fact that he could have gotten a lot larger sentence. Yes, Your Honor. And he is now accepting a plea that would have a parole, mandatory parole attached to it. But he's looking at the possibility that if he doesn't plead, there could be all these other charges. Is that what we're looking at? Right. And also, Your Honors, in the California Supreme Court case, People v. Barella, where the California Supreme Court discusses whether or not parole consequences are required as an advisement under Boycantel and holds under Hillevy-Larcot that it's not, they also discuss an intermediate court of appeal case named Cortez. And that also was a three-strikes case. And in that case, the court of appeal held well. The defendant wasn't told of all the parole consequences, wasn't told of the parole period, but the trial court told him it was under the three-strikes law. And that implies the rest of it that goes with the three-strikes sentencing provisions. And in Barella, the court actually did approve that case. So that, under the California rule of procedure, is a case that would be important. Could you agree that the test of prejudice is whether had he been in, assuming he wasn't fully aware, had he been aware, he would have pleaded not guilty and gone to trial? Your Honor, there's a slight difference in the standard between a criminal procedure advisement and a Boycantel advisement. In the case of a Boycantel advisement, there's a footnote 10 in United States v. Benitez that says we don't mean to overturn Boycan's requirement. We don't look at whether the guy would have pled guilty anyway. But we do look at the record to see if he knew. And in this case, he knew. So under Boycantel, that would be satisfied. But under the other kind of guilty plea error, namely the failure to warn of a consequence that's collateral, like a parole issue, it is the standard of review is as the court has stated. And it doesn't have anything to do with whether you think he'd be convicted or not. Well, the strength of the case can be an issue, but the court in Benitez. Only as it affects his decision. Right. Right. The court in Benitez focuses on the plea deal offered versus what was the likely sentencing exposure also as a part of that calculus. Thank you. Thank you, counsel. Ms. Wiggins. Thank you, Your Honors. I'll try to make a few brief points. The government began by arguing that Mr. Wright was aware of the parole consequences because of his criminal history. And I think that we have to look at the transcript of this change of plea in sentencing hearing. I would assume that in his prior plea entries, as is provided by the California created rule that the judge should warn of parole, the mandatory parole term, I would assume that he was told that in his prior entries of plea. In this one, it was done pursuant to the former rule 412 of the California rules of court, which is a very reduced sort of plea in sentencing procedure. If everyone agrees on the number of years, then it doesn't get referred to probation. The judge doesn't have to give reasons for the sentence. And in this case, he was simply told this is precisely what you'll get is 37 years. I think even if someone had been told in the past, you're going to get parole at the end, in his prior entries of pleas, he could believe in this case, because it's not mentioned at the change of plea or sentencing, that he's making a bargain for precisely 37 years, no more, no less. I also wanted to address Judge Hogg's question. If you can do it in about 20 seconds, you're out of time. Okay. Just on what you look at in terms of the probability that the defendant would have still entered the plea had he known all of the information, I think you can look at outside evidence. But the ultimate question is, wise or foolish, what would this defendant have done? Only the defendant can decide whether to go to trial or to plead guilty. And you look at the evidence of what this defendant would have done, and I think here the evidence is clear. He tries to get out of this when the State still has everything ready to go for trial. He sincerely wanted to get out of this plea. Thank you. Thank you very much. The case just argued is submitted. The next case on the calendar, Johnson v. Castro, is ordered submitted on the briefs, and we will now close the hearing.
judges: Hug, Canby, Tallman